UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ERNEST VEREEN, JR.,

v.                          Case No. 8:15-cr-474-VMC-JSS
                                     8:21-cv-511-VMC-JSS

UNITED STATES OF AMERICA.

_____/

**ORDER**

This matter comes before the Court upon consideration of Ernest Vereen, Jr.'s pro se 28 U.S.C. § 2255 Motion to Vacate, Set Aside, or Correct Sentence (Civ. Doc. # 1; Crim. Doc. # 175), filed on March 1, 2021. The United States of America responded on April 8, 2021. (Civ. Doc. # 6). Mr. Vereen replied on May 4, 2021. (Civ. Doc. # 8). For the reasons set forth below, the Motion is denied.

**I.   Background**

On November 19, 2015, a federal grand jury indicted Mr. Vereen with one count of knowingly possessing, in and affecting interstate commerce, a firearm, while having been previously convicted of a crime punishable by imprisonment for a term exceeding one year, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). (Crim. Doc. # 1 at 1-2). The firearm in question was a "Smith & Wesson, model M&P Shield, 9mm

1

caliber." (Id.; Crim. Doc. # 137 at 3). The indictment listed the six following previous convictions: (1) child abuse, (2) purchase of cannabis, (3) aggravated battery, great bodily harm and deadly weapon, (4) aggravated battery, great bodily harm, (5) battery domestic violence, second or subsequent offense, and (6) false imprisonment. (Id.). Following the indictment, the case was assigned to the Honorable Richard A. Lazzara, United States District Judge. (Crim. Doc. # 10).

The facts of the case are as follows: On September 19, 2015, Samuel South, a United States Postal Service employee, was delivering mail at Mr. Vereen's apartment complex. (Doc. # 156 at 122:13-16, 127:15-21, 132:21-23). When Mr. South opened Mr. Vereen's locked mailbox, he discovered a firearm pointing toward him. (Id. at 122:17-20, 132:4-5; 133:9-134:1). Mr. South photographed the firearm and contacted law enforcement. (Id. at 122:22-23, 134:4-5, 136:16-25, 141:2-3). When law enforcement arrived, Mr. South provided them with the key to the mailbox, and a number of officers began surveilling the complex such that they could see both Mr. Vereen's apartment and the mailbox. (Id. at 122:24-123:4, 137:4-6, 141:5-142:10). Thereafter, Mr. Vereen exited his apartment, walked to the locked mailbox, unlocked it, took the firearm, and placed it in his back pants pocket. (Id. at

123:8-11, 143:19-145:9, 174:1-175:19). At that point, the officers identified themselves and commanded Mr. Vereen to put his hands in the air. (Id. at 147:5-8). Before doing so, however, Mr. Vereen "kind of hesitated and looked directly at [the officers]." (Id. at 147:17-21). Mr. Vereen then briefly reached toward his back pocket, where the firearm was located. (Id. at 152:12-19). Thereafter, the officers arrested Mr. Vereen and recovered the firearm. (Id. at 146:19-148:2).

Following Mr. Vereen's arrest, law enforcement searched his one-bedroom apartment with the consent of his girlfriend, with whom he shared the apartment. (Crim. Doc. # 160 at 21:13-16; 33:16-21, 37:11-19; Crim. Doc. # 137 at ¶ 9). In the bedroom closet, officers recovered a "black shotgun with a pistol grip" and a box of "9 millimeter ammunition," which matched the firearm obtained from Vereen's pocket. (Crim. Doc. # 160 at 38:3-12).

On January 26, 2016, the Court appointed the Office of the Federal Defender to represent Mr. Vereen, and the case was assigned to Assistant Federal Defender Adam J. Nate. (Crim. Doc. ## 8; 12). Mr. Nate filed a notice of potential conflict of interest, and the Court granted his motion to withdraw on March 4, 2016. (Crim. Doc. ## 26; 33). That same day, Mr. Vereen was appointed a second attorney, Michael Paul

Beltran. (Crim. Doc. # 36). On April 25, 2016, Mr. Vereen filed a pro se petition for writ of habeas corpus, arguing that he should be released from custody on a number of bases, including in pertinent part: "I petitioner, Ernest Vereen ha[ve] been asking my conflict lawyer to present a motion to dismiss, a motion to suppress, and a motion to acquit[t]al. All I keep getting is knowledge that is contrary to law from the conflict lawyer." (Crim. Doc. # 48 at 3). Shortly after, Mr. Beltran filed an ex parte motion to withdraw, which the Court granted on May 12, 2016. (Crim. Doc. ## 50; 56).

The Court then appointed Mr. Vereen's third attorney, Frank Louderback. (Crim. Doc. # 57). Approximately four months later, on September 12, 2016, Mr. Louderback moved to withdraw from the case, which the Court granted. (Crim. Doc. ## 92; 93). The Court then appointed Mr. Vereen's fourth attorney, Mark J. O'Brien. (Crim. Doc. # 94). The case was then scheduled to proceed to trial before Judge Lazzara on October 31, 2016. (Crim. Doc. # 98). However, upon Judge Lazzara's request, the trial proceeded before the undersigned in his stead. (Crim. Doc. # 100; Crim. Doc. # 161:13-15).

At trial, the parties stipulated to Mr. Vereen's status as a convicted felon, to the gun at issue being a firearm as defined by 18 U.S.C. § 921(a)(3), and that the firearm

4

"traveled in and affected interstate commerce on or before September 19, 2015." (Crim. Doc. # 156 at 125:18-126:9, 157:5-158:4; Crim. Doc. # 160 at 13:4-11). In his defense, Mr. Vereen testified that he took the firearm from the mailbox because he intended to "report it to the police." (Doc. # 160 at 9:22-16). Following a two-day trial and about two hours of deliberation, the jury returned a guilty verdict. (Crim. Doc. # 108; Crim. Doc. # 160 at 111:17, 119:9-14, 120:19-122:4).

Because of Mr. Vereen's previous prior felony convictions – namely, for child abuse and two separate counts of aggravated battery – the final pre-sentence investigation report ("PSR") provided for an Armed Career Criminal Act ("ACCA") enhancement. (Doc. # 137 at ¶ 24). With a total offense level of 33 and a criminal history category of VI, this placed Mr. Vereen's guideline range of imprisonment between 235 and 293 months. (Id. at ¶¶ 28, 42, 92).

At Mr. Vereen's January 12, 2017, sentencing before the undersigned, Mr. O'Brien moved to withdraw from the case, (Crim. Doc. ## 118; 123). Mr. O'Brien explained that Mr. Vereen "filed a Florida Bar complaint against [him]" and that Mr. Vereen requested that he "file many legal objections that [he did] not believe [were] appropriate." (Crim. Doc. # 132

at 3:12-4:9). Regarding Mr. Vereen's requested objections to the PSR, O'Brien noted:

> Mr. Vereen believes that I am wrong and he is correct in terms of the legal accuracy of his [PSR]. I believe that his objections are frivolous, and I did not adopt them, although I did file them. . . . I believe that he has three qualifying offenses that are under the statute. I've researched them. In the interest of caution, after I received his letter, I actually hired a retired probation officer who has been around for several decades to see if I was wrong. He does not believe that I am wrong. So I just don't have a good faith basis to make the objections that he wants me to make[.]

(Id. at 6:23-7:18). After some discussion, the Court granted Mr. O'Brien's motion to withdraw, and Mr. Vereen's sentencing was continued to a later date. (Crim. Doc. ## 124; 125).

That same day, Mr. Vereen was appointed his fifth attorney, Anne F. Borghetti. (Crim. Doc. # 126). The following day, the Court vacated its order appointing Ms. Borghetti, and Mr. Vereen was appointed his sixth attorney, Christophir Kerr. (Crim. Doc. ## 128; 129). At the March 9 and 10, 2017, sentencing, Mr. Vereen, through counsel, objected to the ACCA enhancement. (Crim. Doc. # 161 at 7:21-12:16, 24:19-27:12; Crim. Doc. # 162 at 19:9-11). In the midst of sentencing, Mr. Kerr notified the Court: "Mr. Vereen has just informed me that because of a difference that we have over a particular issue[,] . . . he wishes at this point to represent himself."

(Crim. Doc. # 162 at 4:3-6). After discussing this with both parties, the Court denied Mr. Vereen's request to proceed pro se. (Id. at 162:4-9). The government then introduced an additional predicate felony upon which Mr. Vereen could be enhanced as an armed career criminal – a felony battery to which he pled guilty. (Crim. Doc. # 161 at 6:2-5; Crim. Doc. # 162 at 19:19-21:17). Thereafter, the Court overruled Mr. Vereen's ACCA objection, along with his other objections. (Crim. Doc. # 162 at 21:15-17, 35:4-8).

The Court ultimately sentenced Mr. Vereen to 293 months' imprisonment, followed by five years' supervised release. (Crim. Doc. # 149 at 1-3; Crim Doc. # 162 at 38:5-13). On March 13, 2017, Mr. Vereen appealed his conviction and sentence to the Eleventh Circuit. (Crim. Doc. # 151). Following briefing and oral argument, the Eleventh Circuit affirmed. (Crim. Doc. # 168; Crim. Doc. # 169; Civ. Doc. # 6 at 3). Mr. Vereen then filed a petition for writ of certiorari to the United States Supreme Court, which was denied on March 2, 2020. (Crim. Doc. # 173).

Now, Mr. Vereen moves for post-conviction relief and has filed a memorandum in support. (Civ. Doc. ## 1; 2). The United States responded (Civ. Doc. # 6), and Mr. Vereen has replied. (Civ. Doc. # 8). Along with his reply, Vereen filed a notice

7

of supplemental authority with the Court. (Civ. Doc. # 9).
The Motion is ripe for review.

## II. **Discussion**

In his Motion, Mr. Vereen advances four grounds for post-conviction relief, all based on ineffective assistance of counsel. (Civ. Doc. # 1 at 4-8). The Motion is timely, and his claims are cognizable. (Civ. Doc. # 6 at 7-8). Mr. Vereen bears the burden of proving he is entitled to relief under Section 2255. See Rivers v. United States, 777 F.3d 1306, 1316 (11th Cir. 2015) ("Rivers bears the burden to prove the claims in his [Section] 2255 motion.").

### A. **Ground One**

First, Mr. Vereen argues that his fourth court-appointed attorney, Mr. O'Brien, was ineffective because he "conducted no investigation whatsoever, [and] failed to file any motions," such that he "was constructively denied counsel at [the] pretrial stage." (Civ. Doc. # 1 at 4).

To prevail on a claim of ineffective assistance of counsel, a petitioner must show that (1) his counsel's performance was deficient, and (2) the deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). To establish deficient performance, Mr. Vereen must demonstrate by a preponderance of the evidence

8

"that particular and identified acts or omissions of counsel 'were outside the wide range of professionally competent assistance.'" Chandler v. United States, 218 F.3d 1305, 1314 (11th Cir. 2000) (citations omitted). In other words, Mr. Vereen must show that "no competent counsel would have taken the action that his counsel did take." Id. at 1315. In deciding whether an attorney's performance was deficient, courts are "highly deferential" and "indulge [the] strong presumption that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment." Id. at 1314 (internal citation and quotation marks omitted). Mr. Vereen "must provide factual support for his contentions regarding counsel's performance. . . . Bare, conclusory allegations of ineffective assistance are insufficient[.]" United States v. Rowls, Nos. 4:09-cr-16-RV-CAS, 4:12-cv-114-RV-CAS, 2013 WL 5781575, at *6 (N.D. Fla. Oct. 25, 2013) (citations omitted).

To satisfy Strickland's second prong — prejudice — Mr. Vereen must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. "[I]f a claim

fails to satisfy the prejudice component, the court need not make a ruling on the performance component." Ortiz v. United States, Nos. 8:16-cv-1533-VMC-JSS, 8:15-cr-409-VMC-JSS, 2017 WL 6021645, at *2 (M.D. Fla. Jan. 11, 2017).

In his Motion, Vereen provides no basis for the conclusory argument that Mr. O'Brien "conducted no investigation whatsoever, or failed to file any motions." (Civ. Doc. # 1 at 4); see Wilson v. United States, 962 F.2d 996, 998 (11th Cir. 1992) (per curiam) ("Conclusory allegations of ineffective assistance are insufficient." (citation omitted)). Indeed, from the Motion, the Court cannot ascertain what Mr. Vereen contends Mr. O'Brien should have investigated or which motions he should have filed during the period of time that he represented Mr. Vereen. And, in any case, Mr. O'Brien did move the Court for a judgment of acquittal following the close of the government's case in chief. (Crim. Doc. # 156 at 178:2-6; Crim. Doc. # 103); see Rosin v. United States, 786 F.3d 873, 879 (11th Cir. 2015) (affirming the denial of a Section 2255 motion where the petitioner's allegations were contradicted by the record).

In his reply, Mr. Vereen argues that "Mr. O'Brien could have filed a motion to suppress the shotgun and bullets which [were] the items that [were] seized in the condo from a

warrantless search" and "a motion for a pre-trial exclusionary hearing for illegally obtained evidence." (Civ. Doc. # 8 at 4). As to these motions, the Court notes that Mr. O'Brien did object to the introduction of the shotgun at trial, but this objection was overruled. (Crim. Doc. # 160 at 34:4-12). And, Mr. O'Brien submitted an affidavit explaining that, during his pre-trial discussions, Mr. Vereen "did not ask [Mr. O'Brien] to file a renewed request to dismiss, nor did he ask [him] to file a motion to suppress the search and seizure issued in this case, and if he had it would have been a frivolous motion, as there were no legal grounds to dismiss the indictment."[1] (Civ. Doc. # 7-1 at 5).

Regarding Mr. O'Brien's alleged failure to investigate, Mr. Vereen explains in his reply that "Mr. O'Brien didn't investigate how the firearm got put in the mailbox or why it was left there by officers of the law." (Civ. Doc. # 8 at 5). Mr. Vereen also contends that Mr. O'Brien should have investigated whether he actually reached for the firearm after being approached by law enforcement. (Id. at 6). Additionally, Mr. Vereen argues that Mr. O'Brien should have

---

1. Because Mr. O'Brien's failure to file a motion to suppress is the subject of Mr. Vereen's third ground for post-conviction relief, the Court addresses the substance of the post-arrest search and seizure of his apartment in Part II.C.

investigated his arresting officers because they "didn't follow police procedural protocol when finding a reported lost firearm." (Id. at 8). Finally, Mr. Vereen posits Mr. O'Brien should have investigated the apartment lease so that Mr. O'Brien could contact the lessee. (Id. at 9).

However, the Court does not find any prejudice resulting from Mr. O'Brien's alleged failure to investigate these issues. Regardless of how the firearm arrived in Mr. Vereen's mailbox, he admitted at trial that he knowingly possessed it. (Crim. Doc. # 160 at 14:5-11); see also Snyder v. United States, Nos. 3:03-cr-223-HWM-TEM, 3:06-cv-943-HWM-TEM, 2007 WL 595249, at *1 (M.D. Fla. Feb. 21, 2007) ("[T]he Petitioner cannot show the prejudice required to establish ineffective assistance of counsel when his assertions post-sentencing contradict his previous sworn statements to the Court."), aff'd, 148 F. App'x 888 (11th Cir. 2005) (per curiam). And, Mr. Vereen provides no factual basis for the proposition that that the firearm was placed in his mailbox by law enforcement or by some other nefarious character. (Civ. Doc. ## 1; 8).

The Court is also not convinced that testimony about Vereen reaching for his firearm after being approached by law enforcement or the particular protocol followed by law enforcement impacts his case or conviction in any way.

12

Further, it is unclear how a name being on the lease would have impacted the jury's verdict. And, regarding investigation generally, Mr. O'Brien stated in his affidavit that he "spent a significant amount of time researching the legal issues that [Mr. Vereen] raised and provided [said] information to [him]." (Civ. Doc. # 7-1 at 5).

Thus, the Motion is denied to the extent Mr. Vereen claims Mr. O'Brien did not investigate his case or file any motions. See Boschen v. United States, 845 F.2d 921, 922-23 (11th Cir. 1988) (affirming the denial of a petitioner's Section 2255 motion who argued that defense counsel failed to investigate given the overwhelming evidence supporting the petitioner's conviction); see also Davis v. United States, Nos. CV 111-198, CR 110-041, 2013 WL 1130590, at *10 (S.D. Ga. Jan. 15, 2013) ("Petitioner cannot allege prejudice from any supposed failing of counsel where the conduct he asserts counsel should have undertaken would have been fruitless.").

**B.   Ground Two**

Next, Mr. Vereen argues Mr. O'Brien was ineffective because "he failed to challenge the defective indictment filed in this case. The indictment didn't charge knowledge as to his status as a convicted felon." (Civ. Doc. # 1 at 5).

13

In 2019, the Supreme Court held in Rehaif v. United States, 139 S. Ct. 2191 (2019), "that in a prosecution under 18 U.S.C. §§ 922(g) and 924(a)(2), the Government must prove both that the defendant knew he possessed a firearm and that he knew that he belonged to the relevant category of persons barred from possessing a firearm." Id. at 2200. Prior to this ruling however – and, pertinently, from the time Mr. Vereen was indicted to the time he was sentenced – Eleventh Circuit precedent provided that an individual charged under Section 922(g) need not have known that he was a convicted felon. See United States v. Jackson, 120 F.3d 1226, 1229 (11th Cir. 1997) ("The Fifth Circuit held that knowledge of a legal obligation is not an element of 18 U.S.C. § 922(g). Based on the law, it does not appear that the district court erred in giving the instruction that it was not necessary that Jackson knew that he had been convicted of a felony." (footnote omitted)).

Indeed, counsel is not ineffective "for failing to anticipate change in law." Viers v. Warden, 605 F. App'x 933, 942 (11th Cir. 2015). And, Mr. Vereen has not demonstrated any prejudice, especially given that he stated himself at trial that he was aware he was a convicted felon. See (Crim. Doc. # 160 at 13:2-11 ("Q. You admit you are a felon, right? A. I'm a felon, yes. Q. Multiple prior felony convictions,

14

right? A. I have convicted felonies on my record, yes. Q.
Multiple? A. Yes, I've been convicted of a felony. Q. Okay.
And so we're not denying that. That's not in dispute, correct?
A. Not in dispute at all.")). Mr. Vereen had been convicted
of multiple felonies by the time of his arrest in this case,
such that it "is especially likely [he knew] he [was] a
felon." United States v. Innocent, 977 F.3d 1077, 1082 (11th
Cir. 2020) ("He was convicted of four felonies on three
occasions. Most people convicted of a felony know that they
are felons. . . . And someone who has been convicted of
felonies repeatedly is especially likely to know he is a
felon. . . . Had the issue been contested at trial, Innocent's
four felony convictions would have provided the government
powerful evidence that he knew he was a felon."); (Civ. Doc.
# 6 at 9; Crim. Doc. # 137 at ¶¶ 29-43 (detailing Mr. Vereen's
criminal history)).

Accordingly, the Motion is denied as to Mr. Vereen's
second ground. See Geter v. United States, 534 F. App'x 831,
836 (11th Cir. 2013) (affirming the denial of a Section 2255
motion on because "[i]t is well-settled that an attorney's
failure to anticipate a change in the law will not support a
claim of ineffective assistance of [] counsel").

C.   **Ground Three**

Next, Mr. Vereen argues Mr. O'Brien was ineffective because "he failed to file a motion to dismiss the case based on an illegal search and [seizure]." (Civ. Doc. # 1 at 7). Again, the Motion itself is conclusory as it neither specifies which search or seizure was "illegal" nor the basis for its unlawfulness. (Id.). In his reply, Mr. Vereen elaborates:

> [Giselle Santiago] was with me at the time of my arrest. Who the police got consent from, to only do a walk through. After telling her they would get childrens and families involved if she don't then they executed an illegal search and seizure without consent of the owner of the lease.
>
> * * *
>
> [Anna Gonzales] could have proven to a jury that the police did not get a legal search warrant signed by her. They never even spoke with Ms. Gonzales. That made any items found in the condo [an] illegal search and seizure. . . . Mr. O'Brien could have filed a motion to suppress the shotgun and bullets which was the items that was seized in the condo from a warrantless search. These items the government used in trial to paint a picture of guilt against Mr. Vereen. . . . Mr. O'Brien could have filed a motion for a pre-trial exclusionary hearing for illegally obtained evidence.

(Civ. Doc. # 8 at 3-4). Thus, it appears that Mr. Vereen is referring to the search of his apartment subsequent to his arrest, where law enforcement discovered a shotgun and ammunition in a closet. (Crim. Doc. # 160 at 38:5-9).

"To obtain relief where an ineffective assistance claim is based on trial counsel's failure to file a timely motion to suppress, a petitioner must prove (1) that counsel's representation fell below an objective standard of reasonableness, (2) that the Fourth Amendment claim is meritorious, and (3) that there is a reasonable probability that the verdict would have been different absent the excludable evidence." Mims v. United States, Nos. 11-20016-CV-MARTINEZ, 08-21080-CR-MARTINEZ, 2011 WL 13267084, at *3 (S.D. Fla. Dec. 30, 2011) (citing Zakrzewski v. McDonough, 455 F.3d 1254, 1260 (11th Cir. 2006)).

The Fourth Amendment prohibits "unreasonable searches and seizures." U.S. Const. amend. IV. "Warrantless searches are 'per se unreasonable under the Fourth Amendment,'" although there are exceptions to this rule. Fuqua v. Turner, 996 F.3d 1140, 1151 (11th Cir. 2021) (quoting Katz v. United States, 389 U.S. 347, 357 (1967)) (emphasis omitted). "[O]ne of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent." United States v. Freyre-Lazaro, 3 F.3d 1496, 1500-01 (11th Cir. 1993) (citation omitted). "A third party with common authority over the premises [or effects] sought to be searched may provide

such consent. . . . Common authority is based upon mutual use
of property by persons generally having joint access or
control." United States v. Acosta, 807 F. Supp. 2d 1154, 1177
(N.D. Ga. 2011) (quoting United States v. Aghedo, 159 F.3d
308, 310 (7th Cir. 1998)).

To the extent Mr. Vereen claims that law enforcement
committed the search without the consent of an individual who
resides in the same complex as him or works at said complex
(Ms. Gonzales), this argument is without merit. Even assuming
Ms. Gonzales could refuse the search of the apartment, there
is no allegation she did so. (Civ. Doc. ## 1; 8). Insofar as
Mr. Vereen claims law enforcement did not obtain the consent
of his girlfriend, Ms. Santiago, to perform a search of the
apartment, at trial, law enforcement testified that they
obtained permission to search the apartment. (Crim. Doc. 160
at 37:11-13). Ms. Santiago lived with him at the apartment,
and she therefore properly consented to a search of the home.
(Id. at 33:16-21; Crim. Doc. # 137 at ¶ 9 ("Ms. Santiago gave
consent for the officers to search the apartment.")); see
United States v. Utley, No. 12-20160, 2012 WL 5897135, at *1-
2 (E.D. Mich. Nov. 21, 2012) (holding that the defendant's
girlfriend could consent to the search of the apartment they
cohabitated). Mr. Vereen provides no factual support for his

18

allegation that the officers did not obtain such consent. (Civ. Doc. ## 1; 8). Nor does he allege that Ms. Santiago's consent was unknowing or involuntary. (Civ. Doc. ## 1; 8). Additionally, Mr. O'Brien stated in his affidavit that he chose not to file a motion to suppress because Mr. Vereen did not ask him to, and because "it would have been a frivolous motion." (Civ. Doc. # 6-1 at 5).

Therefore, Mr. Vereen has not demonstrated that Mr. O'Brien was ineffective in failing to file a motion to suppress the fruits of this search. See Jackson v. United States, Nos. 16-00182-WS, 14-00057-WS-N, 2018 WL 3901311, at *6 (S.D. Ala. July 24, 2018) ("From this description of the traffic stop, it does not appear that a motion to suppress, challenging the legality of the stop, would have been successful. Counsel is not constitutionally deficient for failing to preserve or argue a meritless claim."); see also McIntyre v. United States, Nos. 7:12-cv-08017-LSC-RRA, 7:09-cr-0174-LSC-RRA, 2014 WL 6239702, at *5 (N.D. Ala. Nov. 13, 2014) ("McIntyre's attorney states that she chose not to file a motion to suppress because any such motion would fail. . . . This Court can find no reason to disagree with her assessment, and thus will not second-guess her decision not to file a motion to suppress.").

19

Even so, the Court finds that no prejudice resulted from the shotgun and ammunition being introduced at trial. Indeed, the basis of the indictment and conviction was the firearm he obtained from the mailbox. (Crim. Doc. # 1). This firearm was recovered by law enforcement prior to the search of Mr. Vereen's apartment. (Crim. Doc. # 156 at 147:22-148:2; Crim. Doc. 160 at 37:11-38:9). Mr. Vereen was not charged for possession of either the shotgun or the ammunition discovered in his apartment closet. (Crim. Doc. # 1). Nor did the government spend significant time discussing it at trial. (Crim. Doc. # 160 at 38:5-39:1). Accordingly, the Motion is denied as to the third ground. See Hayes v. United States, No. 8:17-cv-609-RAL-AAS, 2017 WL 4476967, at *4 (M.D. Fla. Oct. 6, 2017) (denying a Section 2255 motion based on ineffective assistance of counsel for failure to file a motion to suppress where "[t]here is no reasonable probability that the outcome of the case would have been different if his counsel had argued to suppress" the evidence at issue).

D.   **Ground Four**

Next, Mr. Vereen argues Mr. O'Brien was ineffective because "he failed to investigate and produce[] witnesses I informed him I had for my defense. He also failed to investigate my ACCA status prior to trial." (Civ. Doc. # 1 at

20

8). Although Mr. Vereen provides additional information in his reply, this ground is conclusory in that it neither lists the witnesses Mr. O'Brien should have produced, nor provides a basis for their introduction. (Id.). Nor does it provide a basis for Mr. O'Brien to have further investigated Mr. Vereen's "ACCA status." (Id.). The Court will begin by addressing the failure to introduce witnesses at trial, followed by Mr. Vereen's status as an armed career criminal.

In his reply, Mr. Vereen contends Mr. O'Brien should have introduced two witnesses at trial: Ms. Santiago and Ms. Gonzales. (Civ. Doc. # 8 at 3). Mr. Vereen contends Ms. Santiago "could have testified in [his] defense that [Mr. Vereen] never possessed any firearms around her or his kids." (Id.). Mr. Vereen avers Ms. Gonzales "could have proven to a jury that the police did not get a legal search warrant signed by her. They never even spoke to her." (Id. at 4).

As to Ms. Santiago, Mr. O'Brien stated in his affidavit that he did not call her as a witness "because as an officer of the court, I cannot suborn perjury." (Civ. Doc. # 6-1 at 5). Indeed, in a November 1, 2016, letter sent by Mr. O'Brien to Mr. Vereen, he wrote:

> As we have discussed, if you testify that you were
> in fear of Mr. Hubbert you will face an onslaught
> of rebuttal testimony that may show you were the

aggressor, you possessed a shot gun and ammunition, *you ordered your girlfriend to lie* about being raped by Mr. Hubbert and you possessed crack cocaine.

(Civ. Doc. # 6-4 at 1 (emphasis added)). And, at trial - outside the jury's presence – the United States explained:

> MS. ADAMS: . . . Additionally I believe we both have a mutual concern about one potential witness and her need for counsel and that would be Giselle Santiago, who I don't believe at this point either of us intend to call. However, we can foresee a situation where we would call her in rebuttal, in which case I believe both counsel agree she would require counsel.
>
> * * *
>
> Giselle Santiago is one of the defendant's paramours. She has a residence that she shared with the defendant from which the defendant exited prior to getting the firearm. . . . After he got the firearm, she gave consent for [a] search of the apartment where they found an additional firearm, some ammunition, which she said did not belong to her. She since has given multiple statements to law enforcement, at times indicating that Mr. Vereen knew nothing about the firearms, things of that nature, *but also that Mr. Vereen had forced her to tell this story about his lack of knowledge of the firearms, specifically he made the story up, he wanted her to tell it*, that sort of thing. So at this point she's alternated, stating sometimes that law enforcement had forced her, pressured her to make incriminating statements about Mr. Vereen, but also *Mr. Vereen had forced her, pressured her to make those statements*.

(Crim. Doc. # 156 at 6:22-7:3, 72:14-73:10 (emphases added)).

Counsel is not ineffective for making the tactical decision to not call a witness who would perjure herself. See

Place v. United States, No. 09-10152-NMG, 2014 WL 2803740, at
*3 (D. Mass. June 20, 2014) ("The decision to call a witness
is 'almost always strategic' and a petitioner is therefore
unlikely to overcome the strong presumption that declining to
call the witness was 'sound trial strategy.' (citation
omitted)). Mr. Vereen offers no factual support countering
Mr. O'Brien's affidavit discussing Ms. Santiago's testimony.
(Civ. Doc. ## 1; 8). And, the testimony Mr. Vereen proposes
Ms. Santiago should have made – that is, stating that she had
never seen Mr. Vereen with a firearm, would not counter the
strong evidence presented at trial that Mr. Vereen indeed did
obtain the firearm from the mailbox. (Civ. Doc # 8 at 3).

Therefore, Mr. O'Brien was not ineffective for failing
to call Ms. Santiago as a witness. See Rowls, 2013 WL 5781575,
at *7 (denying a Section 2255 based on counsel's failure to
obtain witnesses for trial); see also Santeyan v. Lewis, 87
F.3d 1322, 1322 (9th Cir. 1996) ("Here, Santeyan contends
that counsel's performance was deficient for failing to call
his brother as a witness in order to contradict the officers'
testimony regarding their prior contact with Santeyan. We
disagree because Santeyan provides no affidavit from his
brother outlining his testimony regarding the prior contact

with the officers and the decision to call a witness rests within the sound discretion of counsel.").

Regarding Ms. Gonzales, as the Court previously explained, law enforcement did not need her consent to search Mr. Vereen and Ms. Santiago's apartment.[2] Accordingly, the testimony Mr. Vereen contends Ms. Gonzales would have proffered – that "the police did not get a legal search warrant signed by her" – is irrelevant and would not have affected the outcome of the case. (Civ. Doc. # 8 at 4). Thus, Mr. Vereen cannot show prejudice from the failure to call Ms. Gonzales as a witness, and the Motion is denied as to this argument as well. See United States v. Hurtado, Nos. 2:08-CR-00102-KJD-LRL, 2:10-CV-01937-KJD-LRL, 2013 WL 2405224, at *2 (D. Nev. May 31, 2013) ("In his motion, Movant fails to identify a single witness who could create a potential alibi or offer any exculpatory testimony. Therefore these decisions

_____

2. In one part of Mr. Vereen's reply, he appears to refer to Ms. Gonzales, as opposed to Ms. Santiago, as his girlfriend. (Civ. Doc. # 8 at 3). However, he still states that Ms. Santiago was the individual "who lived in [his] condo." (Id.). Both at trial and in the PSR, Ms. Santiago is the individual referred to as Mr. Vereen's girlfriend. (Crim. Doc. # 156 at 72:14-18; Crim. Doc. # 137 at ¶ 9 ("After taking the defendant into custody, his girlfriend, Giselle Santiago, exited the apartment and began talking to the officers.")). Mr. Vereen did not object to that factual statement in the PSR prior to or at sentencing. (Crim. Doc. ## 161; 162).

by trial counsel are assumed to be reasonable and strategic and are 'virtually unchallengeable.'" (citation omitted)); see also Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995) (en banc) ("Which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that we will seldom, if ever, second guess.").

Turning to Mr. O'Brien's alleged failure "to investigate [Mr. Vereen's] ACCA status prior to trial," Mr. Vereen contends that O'Brien should have submitted the issue of whether his offenses qualified under the ACCA to the jury. (Civ. Doc. # 1 at 8; Civ. Doc. # 8 at 15). However, Mr. Vereen's qualifying for an ACCA enhancement was an issue resolved in his direct appeal. (Crim. Doc. # 168 at 2). There, after briefing and oral argument, the Eleventh Circuit affirmed, holding: "With two prior convictions for Florida aggravated battery, and one prior conviction for Florida felony battery, [Mr.] Vereen had the requisite ACCA predicate offenses to qualify as a career offender." (Id. at 28-30).

Because of this alone, Mr. Vereen's argument fails. See Armendaiz v. United States, Nos. 8:13-cv-320-WJC-TBM, 8:10-cr-252-WJC-TBM, 2013 WL 935776, at *2 (M.D. Fla. Mar. 11, 2013) ("Counsel cannot be labeled ineffective for failing to raise issues which have no merit."); see also Orange v. United

States, Nos. 5:14-cv-108, 5:11-cr-7, 2015 WL 10766862, at *3 (S.D. Ga. Oct. 23, 2015) ("Once a matter has been decided adversely to a defendant on direct appeal, it cannot be re-litigated in a collateral attack under [S]ection 2255, unless there has been an intervening change in the law."), report and recommendation adopted, Nos. 5:14-cv-108, 5:11-cr-7, 2016 WL 2354915 (S.D. Ga. May 3, 2016).

Regardless, Mr. O'Brien did not ultimately represent Mr. Vereen at sentencing – instead, Mr. Vereen's sixth attorney, Mr. Kerr, did so. (Crim. Doc. # 145-2 at 1). And, Mr. Kerr zealously objected to the ACCA enhancement – both in his sentencing memorandum and at sentencing. (Crim. Doc. # 139 at 1-17; Crim. Doc. # 161 at 6:17-21). Still, the Court overruled his objection. (Crim. Doc. # 162 at 19:9-11, 21:15-17, 33:17-18, 35:4-8). Accordingly, the Motion is denied as to this ground as well. See Mitchell v. United States, Nos. 5:16-CR-7-BO-2, 5:18-CV-301-BO, 2018 WL 4924010, at *2 (E.D.N.C. Oct. 9, 2018) ("But counsel did object at sentencing to the drug weight, noting that the defense and the government both shared the same objection. . . . Judge Fox then overruled the joint objection. . . . It is clear that counsel's conduct was 'within the wide range of reasonable professional assistance' and did not fall 'below an objective standard of

reasonableness. . . . Thus, petitioner's [] claim must be dismissed." (citations omitted)).

**E.   Other Grounds**

Throughout his reply, Mr. Vereen includes a number of additional arguments related to his claim for ineffective assistance of counsel that were not specifically raised in his initial Section 2255 motion. (Civ. Doc. # 8). Even assuming that these new arguments are timely, they are without both factual support and merit.

First, Mr. Vereen contends Mr. O'Brien was ineffective because he failed to object to trial testimony stating Mr. Vereen reached for the firearm in his back pocket after being approached by law enforcement. (Id. at 6). Mr. Vereen also argues he was prejudiced when Mr. O'Brien did not object to "[h]ow Mr. Vereen came out his home to his mailbox. . . . Mr. Vereen didn't break a law by going to his mailbox." (Id. at 8). However, Mr. Vereen cannot show prejudice because his reaching for the firearm was not an element of the crime, was not discussed at length, and did not affect the outcome of the case. (Crim. Doc. ## 156; 160). Nor does Mr. Vereen provide which objection Mr. O'Brien could or should have made. (Civ. Doc. ## 1;8). And, Mr. Vereen was not on trial for walking to his mailbox, and he does not provide what purported

objection Mr. O'Brien should have made in this regard either. (Civ. Doc. # 8 at 8). The Motion is denied as to this ground.

Next, Mr. Vereen contends that Mr. O'Brien was ineffective because "no evidence was presented at trial of Mr. Vereen doing nothing but trying to report a lost firearm." (Civ. Doc. # 8 at 7). However, this is belied by the record. Indeed, at trial Mr. Vereen testified:

> I looked in [the mailbox] and I seen the gun. When I seen this gun, I'm like, wow. There's a gun in my mailbox. I looked to my left and seen my security gate is wide open. When I seen my security gate open, the first thing comes to my mind is, wow, I'm in trouble. This is crazy. What can you do? It's a gun in your mailbox. I grabbed it out. When I take it out, I grab it by the tip of my fingers. I look at it. I pulled it down.
>
> I started to walk to my condo. Before I walked to my condo, I'm thinking, I got these kids running around here. I don't want my kids to see me with a gun in my hand. So I take it and put it in my back pocket.
>
> Now, *my intention is to take this gun and report it to the police.* When I walked across the street -- as soon as I walked across the street, the police come from everywhere. I see police running down the street. I'm like, whoa. I put my hands up immediately.
>
> When they get to me, I tell them I found this in my mailbox. *I was trying to report it. . . . Pretty much all I was trying to do was report this firearm.*

(Crim. Doc. # 160 at 9:19-10-11:20 (emphases added)).

Accordingly, this was presented to the jury, and Mr. Vereen

cites to no other concrete evidence that could have been introduced corroborating his testimony. (Id.; Civ. Doc. # 8). Thus, the Motion is denied as to this ground. See Barlow v. United States, Nos. 12-00268-CG-B, 14-00233-CG-B, 2017 WL 903477, at *5 (S.D. Ala. Jan. 25, 2017) ("This claim is belied by the record and accordingly, must fail."), report and recommendation adopted, Nos. 12-000268-CG-B, 14-0233-CG-B, 2017 WL 855889 (S.D. Ala. Mar. 2, 2017).

Next, Mr. Vereen refers to a possible entrapment defense. (Civ. Doc. # 8 at 7 ("This firearm was unlawfully put in Mr. Vereen's mailbox and the police left it there for several hours to unlawfully entrap Mr. Vereen into breaking the law.")). However, this argument is conclusory. Mr. Vereen offers no proof that law enforcement placed the firearm in the mailbox or induced him to take it. (Civ. Doc. ## 1; 8). Thus, the Motion is denied as to this ground. See Solomon v. United States, Nos. 1:10-CR-376-RWS-CCH, No. 1:11-CV-4463-RWS-CCH, 2012 WL 1900138, at *3-4 (N.D. Ga. May 2, 2012) ("Because the facts do not support an entrapment defense, Movant cannot demonstrate that he was prejudiced by any failure by counsel to investigate such a defense.").

Next, Mr. Vereen briefly contends that Mr. O'Brien "did not question the witnesses the government brought forth in

trial." (Civ. Doc. # 8 at 7-9). Again, this is belied by the record. Mr. O'Brien did in fact cross examine most of the witnesses brought by the government. (Crim. Doc. # 156 at 137:11-138:16, 151:7-155:13, 156:12-16, 165:12-170:10, 176:19-177:7). And, even so, the decision to cross-examine a witness or how to do so is a strategic one. See United States v. Dormer, Nos. 02-40157-JAR, 10-4026-JAR, 2011 WL 830536, at *6 (D. Kan. Mar. 2, 2011) ("Dormer fails to cite any legal authority distinguishing the decision to cross-examine a witness from tactical decisions such as deciding not to cross-examine a witness, deciding what questions to use in cross-examining a witness, and whether to call a witness. If an attorney is presumed reasonable in his decision not to cross-examine a witness." (footnote omitted)). Accordingly, the Motion is denied as to this ground. See United States v. Dominguez, Nos. CR 11-00506(10) LEK, CV 17-00175 LEK-RLP, 2018 WL 10809369, at *8 (D. Haw. June 29, 2018) ("Mr. Hamar's decision not to cross-examine him fell 'within the wide range of reasonable professional assistance or what 'might be considered sound trial strategy.'" (citation omitted)).

Next, Mr. Vereen argues: "[Mr. O'Brien's] affidavit shows only meeting with Mr. Vereen one time before trial. That wasn't enough time to properly defend Mr. Vereen or

prepare him for trial." (Civ. Doc. # 8 at 8). In his affidavit, Mr. O'Brien explains that he was appointed to represent Mr. Vereen on September 12, 2016, less than two months prior to trial. (Doc. # 7-1 at 5). Mr. O'Brien held a conference with Mr. Vereen on October 26, 2016, and he "spent a significant amount of time researching the legal issues that [Mr. Vereen] raised and provided [said] information to [Mr. Vereen]." (Id.). Given that Mr. Vereen does not explain how this singular meeting prejudiced him, or what other discussions should have been had prior to trial, the Motion is denied as to this ground. See Gibbs v. United States, Nos. 18-21238-CIV-GAYLES, 16-20050-CR-GAYLES, 2018 WL 11247748, at *4 (S.D. Fla. June 4, 2018) ("[C]onclusory claims of ineffective assistance do not support a Strickland claim"), report and recommendation adopted, No. 18-21-238-CIV-GAYLES/WHITE, 2018 WL 11247750 (S.D. Fla. June 26, 2018).

Next, Mr. Vereen contends that Mr. O'Brien "should have brought [him] back before the Magistrate Judge to make [a] record[] that Mr. Vereen was not in knowing possession. Without that being corrected it allowed the government to pursue trial." (Civ. Doc. # 8 at 19). However, Mr. Vereen provides no basis for this constituting ineffective assistance of counsel, and the Court finds that correcting

this alleged error would not have impacted the outcome of the case. (Civ. Doc. ## 1; 8). Indeed, the United States could have proceeded with trial either way. See United States v. Moody, 778 F.2d 1380, 1385-86 (9th Cir. 1985) ("There is no constitutional right to a plea bargain, and the decision whether to offer a plea bargain is a matter of prosecutorial discretion."). Thus, the Motion is denied as to this ground.

Lastly, in the notice of supplemental claims filed separately from his reply, Mr. Vereen argues he was prejudiced by Mr. O'Brien's decision to argue his claim for "innocent transitory possession" as an affirmative defense at trial, as opposed to in a pre-trial motion. (Civ. Doc. # 9 at 3). Mr. Vereen contends "[if] Mr. O'Brien had discussed this with the court[] prior to trial Mr. Vereen would've known not to use the requested affirmative defense as his theory of defense." (Id.). However, Mr. Vereen does not explain how raising this affirmative defense at trial was prejudicial, nor does he state what motion Mr. O'Brien should have filed, or how such motion would impact the outcome of the case. (Id.). Therefore, the Motion is denied as to this ground as well.

## III. **Evidentiary Hearing**

Because the Court was readily able to determine that Mr. Vereen's claims lack merit, no evidentiary hearing is

required.  See 28 U.S.C. § 2255(b) (providing that an evidentiary hearing is not required when "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief"); see also Hernandez v. United States, 778 F.3d 1230, 1232-33 (11th Cir. 2015) ("To establish that he is entitled to an evidentiary hearing, Hernandez had to allege facts that would prove both that his counsel performed deficiently and that he was prejudiced by his counsel's deficient performance.").

## IV. Certificate of Appealability and Leave to Appeal In Forma Pauperis Denied

The Court declines to issue a certificate of appealability because Mr. Vereen has failed to make a substantial showing of the denial of a constitutional right as required by 28 U.S.C. § 2253(c)(2). Nor will the Court authorize Mr. Vereen to proceed on appeal in forma pauperis because such an appeal would not be taken in good faith. See 28 U.S.C. § 1915(a)(3). Mr. Vereen shall be required to pay the full amount of the appellate filing fee pursuant to Section 1915(b)(1) and (2).

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

Ernest Vereen, Jr.'s pro se 28 U.S.C. § 2255 Motion to Vacate, Set Aside, or Correct Sentence (Civ. Doc. # 1; Crim. Doc. # 175) is **DENIED.** The Clerk is directed to enter judgment for the United States of America and to close this case.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 26th day of July, 2021.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE